IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH

| | |
|---|---|
| BRUCE L. BRUNSON,<br><br>        Plaintiff,<br><br>    v.<br><br>PROVIDENT FUNDING ASSOCIATES, LP; JAMES WOODALL; MAX DEFAULT SERVICES CORP.,<br><br>        Defendants. | FINDINGS OF FACT, CONCLUSIONS OF LAW AND ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT<br><br><br>Case No: 2:10cv00795<br><br>District Judge Nuffer |

This matter comes before the Court on Defendants' motion for summary judgment[1] on all claims stated in Plaintiff Bruce L. Brunson's First Amended Complaint.[2] Brunson filed an opposing Memorandum,[3] and Defendants filed a Reply and a Request to Submit for Decision.[4] Brunson filed a Motion to Submit Supplemental Exhibits,[5] which Defendants opposed,[6] and which this Court denied as untimely and not relevant to the pending claims.[7]

Having considered the pleadings by the parties in this matter, this Court entered a Notice on November 8, 2012,[8] stating it was inclined to grant Defendants' Motion for Summary

---

[1] Defendants' Motion for Summary Judgment, docket no. 70, filed June 14, 2012. Defendants filed a Memorandum in Support, docket no. 73, on June 15, 2012.

[2] Amended Complaint, docket no. 33, filed September 24, 2010.

[3] Memorandum in Opposition to Defendant's [sic] Motion to [sic] for Summary Judgment, docket no. 80, filed July 30, 2012.

[4] Reply to Plaintiff's Opposition to Defendants' Motion for Summary Judgment and Request to Submit for Decision, docket nos. 81 and 82, filed August 16, 2012.

[5] Motion to Submit Supplemental Exhibits, docket no. 83, filed September 6, 2012.

[6] Memorandum in Opposition to Motion to Submit Supplemental Exhibits, docket no. 84, filed September 24, 2012.

[7] Order Denying Motion to Submit Supplemental Exhibits, docket no. 86, filed November 8, 2012.

[8] Notice from the Court, docket no. 87, filed November 8, 2012.

Judgment for the reasons set forth in the memoranda, and instructed Defendants to prepare a proposed order which should outline the undisputed facts and apply the relevant statutory and other legal authorities. Objections from Plaintiff[9] to the submitted draft[10] have been considered and where supported by the record have resulted in changes to the draft order. Unsupported objections did not result in changes.

## FINDINGS OF FACT

This Court hereby makes the following Findings of Fact:

1. This action pertains to real property located at 3594 East Supernal Circle, Salt Lake City, UT 84121 (the "Subject Property").[11]

2. On or about November 30, 2004, Brunson executed a deed of trust securing the Subject Property and identifying Defendant Provident Funding Associates, L.P. ("Provident") as "Lender." This deed of trust was subsequently recorded in the Salt Lake County Recorder's Office on December 7, 2004 (entry no. 9242031).[12]

3. The history of this case shows that Brunson did not make any payments on his obligations under the deed of trust from January to July 2008.[13] Brunson's arrearages were summarized in a bankruptcy petition plan he filed in September 2008. Brunson's petition was dismissed in October 2008 without any payment plan having been formally implemented.[14]

4. From approximately September 2008 to December 2009, Defendant Provident's

---

[9] Objections to Proposed Order, docket no. 92, filed December 3, 2012, also Lodged as docket no. 94, on December 17, 2012.

[10] Proposed Order, docket no. 90, filed November 30, 2012m also Lodged as docket no. 93, on December 17, 2012.

[11] *See* Amended Complaint, ¶ 1.

[12] *Id.* at ¶ 2.

[13] Memorandum Decision and Order Dissolving Plaintiff's Preliminary Injunction, ¶ 3, docket no. 75, filed June 15, 2012.

[14] *See* Bankruptcy Case No. 08-24878.

internal records inadvertently and incorrectly indicated that Brunson's bankruptcy was active and ongoing, notwithstanding its dismissal in October 2008.[15]

5. Brunson called Provident on November 24, 2008. David (at Provident) received the call and transferred Brunson to the legal department where Brunson says he was told to keep making payments according to the bankruptcy plan. Brunson says he interpreted this to mean the he should keep making payments according to the "agreement" made in bankruptcy.[16]

6. Brunson made monthly payments from August 2008 through November 2009, and Defendant Provident accepted these payments.[17] However, Brunson's arrears described above were not cured at that point or at any point thereafter.[18] Consequently, Provident continued reporting to credit rating agencies that was Brunson delinquent for each of these payments.

7. In December 2009, Brunson attempted to make a payment to Defendant Provident. However, by this point Provident discovered that it had not updated Brunson's account to reflect the dismissal of his bankruptcy proceedings. Defendant Provident's policy, when an account is not in bankruptcy, is to accept no less than 6 monthly payments, or the amount necessary for the account to be no more than one month delinquent.[19]

8. In late 2009, Brunson, acting on his own behalf and through representatives, communicated with Defendant Provident periodically regarding the status of his loan.[20]

---

[15] Affidavit of Jim Karanfiloglu, ¶ 15, docket no. 54, filed January 23, 2012.

[16] Affidavit of Bruce Brunson in Support of Opposition to Defendant's [sic] Motion to [sic] for Summary Judgment, docket no. 80-1, filed July 30, 2012.

[17] Memorandum Decision and Order Dissolving Plaintiff's Preliminary Injunction, ¶ 3.

[18] Affidavit of Jim Karanfiloglu, ¶ 15.

[19] *Id.* at ¶ 16.

[20] *Id.* at ¶¶ 18-28; Amended Complaint, ¶¶ 19-27.

9. In May 2010, Defendant Provident commenced nonjudicial foreclosure proceedings on the Subject Property due to Brunson's default in payments under the Deed of Trust.[21]

10. This Court has held three (3) hearings in this matter, during which the Court heard testimony. The first hearing, before Judge Tena Campbell, was held on September 21, 2010 (the "First Hearing"); the second, also before Judge Campbell, was held on October 1, 2010 (the "Second Hearing"); and the third hearing, before Judge David Nuffer, was held on May 24, 2012.[22]

11. These hearings dealt principally with Brunson's request for injunctive relief.[23] At the hearing on October 1, 2010, Judge Campbell entered a Preliminary Injunction by stipulation of the parties without making factual findings.[24] However, at the hearing on May 24, 2012, this Court determined that the preliminary injunction should be dissolved, and an order to that effect was entered on June 15, 2012.[25]

12. During the hearing on May 24, 2012, this Court heard testimony from Jim Karanfiloglu, an employee of Defendant Provident, and from Plaintiff Bruce L. Brunson. Specifically, Brunson testified that he felt that when his bankruptcy petition was dismissed that an arrangement had been reached wherein his arrearages had been placed on the end of the loan. However, Brunson also testified that Defendant Provident never actually made such a

---

[21] Memorandum in Support of Motion for Summary Judgment, ¶ 3.

[22] Minute Entry, docket no. 29, filed September 21, 2012 and transcript of the hearing, docket no. 34, filed September 27, 2010; transcript of October 1, 2010 hearing, docket no. 43, filed October 29, 2010; and Minute Entry, docket no. 67, filed May 24, 2012.

[23] *Id.*

[24] Docket no. 43.

[25] *See* Memorandum Decision and Order Dissolving Plaintiff's Preliminary Injunction.

representation to him.[26] Provident continued to accept Brunson's payments for over a year while Provident believed Brunson was still in bankruptcy. While making these payments, Brunson received statements indicating that his payments were being applied to principal and interest and never received a delinquency notice from Provident.[27]

13. In his filings and at the May 24, 2012 hearing, Brunson argued that Defendant Provident's acceptance of his payments during and following his bankruptcy petition amounted to a "misrepresentation" that his arrearages had been cured.[28]

## CONCLUSIONS OF LAW

Having made the foregoing Findings of Fact, this Court hereby makes the following Conclusions of Law:

1. Brunson commenced the present action on August 16, 2010, and also filed an Amended Complaint on September 24, 2010. The Amended Complaint asserts the following four (4) causes of action:

> • First Cause of Action: Negligent Misrepresentation (Against Defendant Provident);
> • Second Cause of Action: Violations of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §§ 1681 et seq. (Against Defendant Provident);
> • Third Cause of Action: Violations of RESPA, 12 U.S.C. § 2605 (Against Defendant Provident); and
> • Fourth Cause of Action (erroneously captioned in the First Amended Complaint as "Fifth Cause of Action"): Violation of the Fair Debt Collection Practices Act (Against "Defendants MERS, any Lender Masquerading as MERS and Any Servicer or Trustee Acting on MERS' Behalf").[29]

As set forth below, each of these claims fails as a matter of law, such that summary

---

[26] *Id.* at ¶¶ 3-4.

[27] Affidavit of Bruce Brunson at ¶ 8.

[28] Memorandum Decision and Order Dissolving Plaintiff's Preliminary Injunction at ¶¶ 4, 5.

[29] *See* Amended Complaint.

5

judgment is appropriate.

### Brunson's Negligent Misrepresentation Claim

2.      Brunson's first cause of action for "negligent misrepresentation" is a tort claim in which Brunson alleges that "Provident carelessly or negligently made false representations to Brunson when it accepted his payments without suspending them, returning them, charging him late fees, or sending him written or verbal communications informing him of any delinquency."[30]

3.      As noted above, Brunson testified at the hearing on May 24, 2012 that he felt that when his bankruptcy petition was dismissed that an arrangement had been reached wherein his arrearages had been placed on the end of the loan.

4.      This Court finds that Brunson's assumption that his arrearages had been placed on the end of the loan was a mistake on his part. According to Brunson's testimony, Defendant Provident never made such a representation to him. Consequently, Brunson's subjective reliance on his own mistaken understanding of this situation was not reasonable.[31]

5.      Brunson has also argued that Defendant Provident's acceptance of his payments during and following his bankruptcy petition amounted to a "misrepresentation" that his arrearages had been cured. However, the Court finds that Defendant Provident's acceptance of these payments was not a representation relating to Brunson's arrearages. The Court finds that none of the documents submitted by the parties includes an actionable representation or misrepresentation as to Brunson's arrearages. Instead, from October 2008 to approximately December 2009, Defendant Provident's course of conduct demonstrates that it was acting as if Brunson was in bankruptcy, not as though Brunson's arrearages had been resolved.[32]

---

[30] *Id.* at ¶ 52.

[31] Memorandum Decision and Order Dissolving Plaintiff's Preliminary Injunction at ¶¶ 3-4.

[32] *Id*. at ¶¶ 5-7.

6

6. Defendant Provident failed to timely take notice of the dismissal of Brunson's bankruptcy petition. However, there was no actual misrepresentation by Defendant Provident, and therefore no misrepresentation at law.

7. The Court further finds that Brunson knew about his arrearages, so any claimed reliance by Brunson on representations to the contrary was not reasonable.

8. A claim for negligent misrepresentation exists "where one . . . carelessly or negligently makes a false representation . . . , expecting the other party to rely and act thereon, and the other party reasonably does so and suffers loss in that transaction, the representor can be held responsible if the other elements of fraud are also present."[33] Those "other elements" require the party claiming fraud to present evidence that it, "acting reasonably and in ignorance of [the representation's] falsity . . . did in fact rely upon it."[34]

9. In the absence of prima facie elements for negligent misrepresentation, including a misrepresentation by Defendants to Brunson and reasonable reliance by Brunson, Brunson's claim for negligent misrepresentation fails as a matter of law.

10. In addition to the foregoing, Brunson's negligent misrepresentation also fails as a matter of law because it is barred by the Economic Loss Rule. This rule is a judge-made doctrine "[which] prevents parties who have contracted with each other from recovering beyond the bargained-for risks."[35] In essence, this rule states that a party suffering "economic loss"[36] from the breach of an express or implied contractual duty may not assert a tort claim for such a

---

[33] *Smith v. Frandsen,* 2004 UT 55, ¶ 9, 94 P.3d 919 (internal quotation omitted).

[34] *Giusti v. Sterling Wentworth Corp.*, 2009 UT 2, ¶ 53, 201 P.3d 966 (citation omitted).

[35] *Sunridge Dev. Corp. v. RB & G Eng'g, Inc.*, 2010 UT 6, ¶ 28, 230 P.3d 1000 (citing *SME Indus., Inc. v. Thompson, Ventulett, Stainback and Assocs., Inc.,* 2001 UT 54, ¶ 36, 28 P.3d 669).

[36] "Economic loss" has been defined as "when no damage occurs to persons or property other than the product in question." *Grynberg v. Questar Pipeline Co.,* 2003 UT 8, ¶ 42, 70 P.3d 1.

breach absent an independent duty of care under tort law.[37]

11. Even assuming that Brunson could articulate a non-contractual duty attributable to Defendant Provident, any tort claim pertaining to the Deed of Trust would still be barred. The economic loss rule also operates to bar tort claims if, as in Brunson's Amended Complaint, the same conduct is described in both the contract and tort claims and the exact same facts and circumstances are at play. In other words, non-contractual duties that substantially overlap with contractual duties are barred by the Economic Loss Rule.[38]

12. In this matter, Brunson's relationship with Provident arises solely out of the Deed of Trust, and Brunson has not identified any non-contractual duty obligating Defendant Provident. Moreover, any conceivable non-contractual duty theoretically owed by Defendant Provident to Brunson would substantially overlap with its contractual duties owed to Brunson. For these reasons, the Economic Loss Rule operates to bar Brunson's negligent misrepresentation claim.[39]

13. Brunson's negligent misrepresentation claim also fails as a matter of law because it is barred by the Statute of Frauds. Utah Code Ann. § 25-5-1 states that "[n]o estate or interest in real property . . . nor any trust or power over or concerning real property in any manner relating thereto, shall be created, granted, assigned, surrendered or declared otherwise than by . . . deed or conveyance in writing subscribed by the party creating, granting, assigning, surrendering or declaring the same." Brunson's Amended Complaint alleges that Defendant Provident made oral representations which altered Brunson's obligations under the Deed of

---

[37] *Hermansen v. Tasulis*, 48 P.3d 235, 240 (Utah 2002) (citation omitted).

[38] *Grynberg*, 2003 UT 8, ¶ 53. *Accord, SME Indus., Inc. v. Thompson, Ventulett, Stainback & Assocs., Inc.,* 2001 UT 54, ¶ 32, 28 P.3d 669 (internal quotation omitted) ("Simply put, the economic loss rule holds that 'economic damages are not recoverable in negligence absent physical property damage or bodily injury.'").

[39] *Narvaez v. Wilshire Credit Corp.*, 757 F. Supp. 2d 621, 634 (N.D. Tex. 2010) (dismissing a negligent misrepresentation claim by a borrower against a loan servicer).

Trust. Such oral representations related to the security interest in the Subject Property, and as such are subject to the Statute of Frauds. Brunson has neither produced a "writing . . . subscribed [to] by" that would satisfy the Statute of Frauds, nor has he alleged that any such writing exists. The Statute of Frauds therefore operates to bar Brunson's negligent misrepresentation claim. Ample case law throughout the United States confirms that an unwritten promise regarding the terms of a loan will be rendered unenforceable by the statute of frauds.[40]

14. Brunson's negligent misrepresentation claim also fails as a matter of law because it violates the terms of the Deed of Trust. The Deed of Trust includes a specific provision that requires that "[a]ll notices given by Borrower or Lender in connection with this Security Instrument must be in writing."[41] Because all notices relating to the Deed of Trust must be in writing, and because Brunson has not alleged the existence of such a writing, he cannot, as a matter of law, claim that the Deed of Trust was modified by *unwritten* representations by Defendants.

**Brunson's FCRA Claim**

15. Brunson's second cause of action is based on the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §§ 1681 et seq.

16. The FCRA "places obligations on three distinct types of entities involved in consumer credit: consumer reporting agencies, users of consumer reports, and furnishers of information to consumer reporting agencies."[42] An actionable claim requires that a defendant

---

[40] *See, e.g., Jarbo v. BAC Home Loan Servicing*, No. 10-12632, 2010 WL 5173825, at *11 (E.D. Mich. Dec. 15, 2010); *Secrest v. Security Nat. Mortg. Loan Trust 2002-2*, 167 Cal. App. 4th 544, 547, 552, 553, 84 Cal. Rptr. 3d 275 (2008); *Nguyen v. Calhoun*, 129 Cal. Rptr. 2d 436 (Cal. App. 6 Dist. 2003).

[41] Trust Deed at ¶ 15, attached as Exhibit B to Amended Complaint, docket no. 33-2.

[42] *Carney v. Experian Info. Solutions, Inc.*, 57 F. Supp. 2d 496, 500 (W.D. Tenn. 1999) (citation omitted).

fall into one or more of these regulated groups.[43]

17. Defendant Provident would, both as a matter of law and based on Brunson's factual allegations, be a "furnisher of information."[44]

18. Brunson's FCRA claim fails because no private right of action exists for violations of FCRA provision prohibiting furnishing of inaccurate information to credit reporting agencies, because this provision may be enforced exclusively by government officials.[45]

19. Additionally, "[f]urnishers of information (which Defendants would be here) can be liable under the FCRA only if they receive notice from the credit reporting agency ["CRA"] that the n disputes the negative report and then they fail to comply with their statutory duties."[46] The CRA then has an obligation to investigate whether the claim is frivolous or irrelevant.[47] Once a claim is deemed viable, the CRA must contact the furnisher of the credit information to allow it an opportunity to investigate and rectify erroneous reports.[48] The furnisher's duty to investigate, however, does not arise unless it receives the notice of the dispute from the CRA directly.[49]

20. In the present case, Brunson's Amended Complaint does not allege that he filed a dispute of any negative report by Defendant Provident with any credit reporting agency. Brunson therefore failed to comply with the procedural requirements under the FCRA, and is therefore not entitled to seek relief under that statute.

---

[43] *Id.*

[44] *Torne v. Republic Mortg. LLC*, No. 2:09-cv-2445-RLH-RJJ, 2010 WL 1904507, at *4 (D.Nev. May 10, 2010).

[45] *Barberan v. Nationpoint*, 706 F. Supp. 2d 408, 427 (S.D.N.Y. 2010) (citations omitted).

[46] *Torne*, 2010 WL 1904507, at *4 (citing *Nelson v. Chase Manhattan Mortg. Corp.*, 282 F.3d 1057, 1060 (9th Cir. 2002)).

[47] 15 U.S.C. § 1681i(a)(3).

[48] 15 U.S.C. § 1681s-2(b).

[49] *Roybal v. Equifax*, 405 F. Supp. 2d 1177, 1179-1180 (E.D. Cal. 2005).

21. Additionally, Brunson alleges in the Amended Complaint that Defendant Provident had a duty to advise him of adverse actions, and implies that negative credit reporting constitutes such an adverse action. To the extent Brunson asserts this as the legal standard, it is simply incorrect. Lenders have no duty under the FCRA to notify a borrower each time the lender makes a report to a credit reporting agency concerning a late payment or other matter impacting the account. Consequently, no claim under the FCRA could lie that Defendant Provident had to notify Brunson each time it made a negative report to a credit reporting agency. Brunson's FCRA claim therefore fails as a matter of law.

**Brunson's RESPA Claim**

22. Brunson's third cause of action is based on the Real Estate Settlement and Procedures Act ("RESPA"), 12 U.S.C. § 2605. Specifically, Brunson claims that he sent a "Qualified Written Request" ("QWR") to Defendant Provident on or about December 30, 2009, and that Defendant Provident "failed to respond" to it.[50]

23. On or about January 20, 2010, Brunson's attorney sent a second purported QWR.

24. On or about January 25, 2010, Defendant Provident sent a letter to Brunson outlining the amount needed to bring the loan current, the due date of the defaulted amount, the deadline for curing the default, and so on.

25. On January 28, 2010, Defendant Provident also sent a response to the letter from Brunson's attorney in which it disputed the validity of that letter as a QWR. Defendant Provident's response also included a copy of Brunson's HUD-1 Settlement Statement, a payment history, copies of the promissory note and trust deed, an "Assistance Package to be completed by the borrowers in its entirety if they wish to be considered for a loan modification or short sale of

---

[50] Amended Complaint at ¶ 28.

the property."  Defendant Provident's letter also recited the past due date, invited Brunson to complete and return the Assistance Package, and also addressed Defendant Provident's inability to treat the attorney's letter as a proper QWR because of its lack of detail.

26.     Given these circumstances, the RESPA claim fails.  Under 12 U.S.C. § 2605(e), "a qualified written request shall be a written correspondence, other than notice on a payment coupon or other payment medium supplied by the servicer, that . . . includes a statement of the reasons for the belief of the borrower, to the extent applicable, that the account is in error or provides sufficient detail to the servicer regarding other information sought by the borrower."  While there may be some residual dispute about whether Brunson's communications meet the requirements for a QWR, the Court need not reach this issue because Defendant Provident responded to both letters within 60 days as required by RESPA.

27.     Additionally, Brunson has not alleged actual damages as a result of the alleged RESPA violation.  Brunson alleges damages arising out of Defendant Provident's negative credit reports about him to credit reporting agencies.  However, most or all of these negative reports predate Brunson's Qualified Written Request.  Moreover, Brunson has failed to produce evidence showing that the credit reporting by Defendant Provident was inaccurate.  Brunson's factual allegations therefore cannot form the basis for a RESPA claim.

### Brunson's FDCPA Claim

28.     Brunson's Fourth Cause of Action is based on the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 et seq.  In this claim, which is alleged solely against Defendant Max Default, Brunson alleges that Max Default sent him a letter, attached as "Exhibit 17" to the Amended Complaint, which failed to contain a "mini-Miranda" warning.[51]

---

[51] Amended Complaint at ¶¶ 128-129.

29. However, Max Default did not send Exhibit 17 to Brunson. Instead, Exhibit 17 was provided to Brunson as part of Defendant Provident's response to what Brunson characterized as a qualified written request under RESPA. No authority supports the proposition that a lender responding to a purported QWR that includes invoices sent to the lender by third parties converts into a direct communication by that third party to the borrower.

30. Additionally, to the extent this cause of action is somehow asserted against Defendant Provident, it fails as a matter of fact and law because Defendant Provident is the lender under the promissory note and assignee of the deed of trust; and as such, it owns the subject debt and is not seeking to collect a debt owed to "another."[52]

**No Claims Against Defendant Woodall**

31. As set forth above, the first, second and third causes of action in the Amended Complaint are asserted solely against Defendant Provident. The caption for the fourth cause of action includes an oblique reference to the foreclosure trustee, Defendant Woodall, but the factual allegations relating to that claim do not reference him. Defendant Woodall is therefore entitled to summary judgment.

---

[52] 15 U.S.C. § 1692a(6) (cited in *Preszler v. Levy & Craig*, No. 1:10-cv-108-DB, 2011 WL 666163, at *1 (D. Utah 2011) ("[A] 'creditor' is one who collects his own debts and a 'debt collector' is one who seeks to collect the debts of another," and "[t]he FDCPA intentionally distinguishes between debt collectors and creditors, and the two categories are mutually exclusive").

## ORDER

Based upon the above Findings of Fact and Conclusions of Law, IT IS HEREBY ORDERED that Defendants' Motion for Summary Judgment[53] is GRANTED and all claims are dismissed with prejudice. The docket clerk is directed to close this case.

Date: December 31, 2012            BY THE COURT:

_____
David Nuffer
United States District Judge

---

[53] Docket no. 70.